FILED

2025 Mar-31  PM 08:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FREDERICK LEON WILLIAMS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:24-cv-242-ACA** |
| | ] | |
| **COMISSIONER,** | ] | |
| **SOCIAL SECURITY** | ] | |
| **ADMINISTRATION,** | ] | |
| | ] | |
| **Defendant.** | ] | |

### MEMORANDUM OPINION

Plaintiff Frederick Leon Williams appeals the Social Security Commissioner's denial of his claim for disability insurance benefits and supplemental security income ("SSI"). Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.    PROCEDURAL HISTORY

Mr. Williams applied for disability insurance benefits in January 2021 and for SSI in January 2022, alleging disability beginning November 25, 2020. (Doc. 6-7 at 5–6; doc. 6-3 at 61 (moving to amend the onset date at the hearing)). The Commissioner denied Mr. Williams's claim both initially and upon reconsideration (doc. 6-3 at 11; doc. 6-4 at 2–28), and Mr. Williams requested a hearing before an

Administrative Law Judge ("ALJ") (doc. 6-5 at 36). After holding a hearing (doc. 6-3 at 31–70), the ALJ issued an unfavorable decision (*id.* at 8). The Appeals Council denied review (*id.* at 2–5), making the Commissioner's decision final and ripe for the court's judicial review, *see* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard of review, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported

by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

To determine whether an individual is disabled, the Commissioner follows a five-step sequential evaluation. *Malak v. Comm'r of Soc. Sec*., No. 24-11728, slip op. at 2 (11th Cir. Mar. 18, 2025) (citing 20 C.F.R. § 404.1520). First, the Commissioner must determine if a claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is so engaged, he is not disabled and the analysis ends. *Id*. §§ 404.1520(b), 416.920(b). Otherwise, the second question is whether the claimant has either "a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe." *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Severity means that the impairment or combination of impairments "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. §§ 404.1520(c), 416.920(c). If the claimant lacks a severe impairment or combination of impairments, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis proceeds to the third step.

At the third step, the Commissioner must determine if the claimant's impairments meet or equal a list of impairments set out in the regulations. *Id*.

3

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do, the Commissioner must find the claimant disabled and the analysis ends. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, at the fourth step the Commissioner must determine the claimant's residual functional capacity. *Id*. §§ 404.1520(e), 416.920(e). If the claimant's residual functional capacity permits the claimant to perform past work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past work, the Commissioner must determine whether the claimant's residual functional capacity, age, education, and work experience permit an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If such an adjustment is possible, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.    EVIDENCE AND ALJ'S DECISION

In November 2020, Mr. Williams was admitted to the hospital for severe low back pain and leg numbness. (Doc. at 6-11 at 6). During a neurosurgical consult, the attending physician opined that Mr. Williams's fifth lumbar vertebrae ("L5") had slipped onto his sacrum, involving some piercing of the L5 nerve roots but no narrowing of the spinal cord, and that neurosurgical intervention was not required. (*Id.* at 21); *see* Foramen, Stedman's Med. Dictionary (2014); Stenosis, Stedman's Med. Dictionary (2014); Lumbar Vertebrae [L1–L5], Stedman's Med. Dictionary

4

(2014); Spondylolisthesis, Stedman's Med. Dictionary (2014); Fusion, Stedman's Med. Dictionary (2014).

Several months after applying for disability insurance and SSI benefits, Mr. Williams saw Valerie Danette Sanford, CRNP, for a consultative examination. (Doc. 6-10 at 52, 57). Nurse Sanford remarked that Mr. Williams "[wore] a back brace for support that helps some" and "shift[ed] frequently on the exam table to help get pain relief." (*Id.* at 52). She opined that Mr. Williams's brace was medically necessary for lumbar support. (*Id.* at 55). Nurse Sanford found that Mr. Williams had normal gait and station, neuromuscular strength, and reflexes, but that he had difficulty getting on and off the exam table, walking on heels, walking on toes, and squatting and rising. (*Id.* at 54–55). When examining Mr. Williams's lumbar spine range of motion, Nurse Sanford recorded that he had a forward flexion range of 80 degrees (on a scale of 0–90 degrees); an extension range of 15 degrees (on a scale of 0–15 degrees); and left and right lateral flexion ranges of 20 degrees (on a scale of 0–25 degrees).[1] (Doc. 6-10 at 55). Nurse Sanford also opined that Mr. Williams had limitations in sitting, standing, walking, lifting, and carrying as a result of sciatic nerve paid and degenerative joint disease. (*Id.* at 57).

---

[1] Nurse Sanford recorded Mr. Williams's right lateral flexion range as "220." (Doc. 6-10 at 55). But given Mr. Williams's left lateral flexion range of 20 and the normal scale of 0–25 (*id.*), the court assumes the "220" is a typographical error and that Nurse Sanford intended to record Mr. Williams's right lateral flexion range as "20."

The ALJ determined that Mr. Williams had not engaged in substantial gainful activity since November 25, 2020, the amended alleged onset date. (Doc. 6-3 at 13). The ALJ found that Mr. Williams's obesity, degenerative disc disease, and anterolisthesis were severe impairments, but that Mr. Williams did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 14–15).

After considering the evidence in the record, the ALJ determined that Mr. Williams "has the residual functional capacity to perform light work . . . except occasional climbing of stairs, stooping, crouching, crawling, kneeling and no climbing of ladders, ropes, or scaffolds." (Doc. 6-3 at 15). The ALJ determined that Nurse Sanford's opinion—that Mr. Williams was limited in his ability to sit, stand, walk, lift, and carry—was vague and not supported by her own findings of Mr. Williams's motor strength, reflexes, lumbar range of motion, and sensory functions. (*Id.* at 21). The ALJ also found that Nurse Sanford's opinion was "not consistent with [Mr. Williams's] longitudinal treating medical records or [his] daily activities." (*Id.*).

Based on Mr. Williams's residual functional capacity and the testimony of a vocational expert, the ALJ found that Mr. Williams was unable to perform any past relevant work (*id.* at 22), but that he was capable of performing jobs that exist in

significant numbers in the national economy such as electrical assembler, router, and marker (doc. 6-3 at 23). Accordingly, the ALJ determined that Mr. Williams had not been under a disability, as defined in the Social Security Act, from November 25, 2020 through the date of the ALJ's decision. (*Id.* at 24).

## IV.    DISCUSSION

Mr. Williams argues that the court should reverse and remand the Commissioner's decision "because the ALJ's findings regarding the persuasiveness of Nurse Practitioner Valerie Danette Sanford's opinion are not supported by substantial evidence." (Doc. 8 at 3).

An ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how he considered those factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability refers to the extent to which an examiner relies on "objective medical evidence" and "supporting explanations," and

consistency refers to the opinion's similarity to "the evidence from other medical sources and nonmedical sources in the claim." *Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Mr. Williams first contends that the ALJ did not point to a "genuine inconsistency" when he found that Nurse Sanford's opinion conflicted with her examination. (Doc. 8 at 10; *see also id.* at 7 (citing *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021))). "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Simon*, 7 F.4th at 1107. Instead, the ALJ "must identify a genuine inconsistency" between a treating physician's opinion and other medical findings. *Id.*

Nurse Sanford opined that Mr. Williams was limited in his ability to sit, stand, walk, lift, and carry. (Doc. 6-10 at 57). The ALJ determined that Nurse Sanford's opinion conflicted with her finding that Mr. Williams exhibited normal motor strength, normal reflexes, mild limitations in lumbar range of motion, and normal sensory functions, but the ALJ did not explain how those findings were inconsistent with her opinion. (Doc. 6-3 at 21). However, unlike the ALJ in *Simon*, the ALJ did not point to "highly generalized statements" that only created "a trivial and indirect tension" with Nurse Sanford's opinion. *Simon*, 7 F.4th at 1107. The ALJ identified

concrete inconsistencies in Nurse Sanford's opinion that other physicians had also identified. (*See, e.g.*, doc. 6-4 at 16) (upon reconsideration, a physician's evaluation of Nurse Sanford's opinion as only "partially consistent" because the "very mildly limited lumbar [range of motion] . . . did not support the severity of the limitations opined"). The court finds that substantial evidence in the record supports the ALJ's consistency analysis.

Mr. Williams also argues that the ALJ failed to describe Nurse Sanford's observations that Mr. Williams had "difficulties getting on and off the exam table, walking on his heels or toes, squatting and rising, and need[ed]. . . his back brace." (Doc. 8 at 10). But only a few pages before the ALJ's persuasiveness analysis of Nurse Sanford's opinion (*see* doc. 6-3 at 21), the ALJ directly quotes Nurse Sanford's description of Mr. Williams's "difficulty getting on and off the examination table, walking on his heels, walking on his toes, squatting, . . . rising," and "wearing a back brace for lumbar support" (*id.* at 17). The ALJ was not required to re-summarize Nurse Sanford's notes in his persuasiveness analysis. *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024), *cert. denied sub nom. Raper v. O'Malley*, No. 24-206, 2024 WL 5112292 (U.S. Dec. 16, 2024) ("Though the ALJ did not repeat his discussion of those records in the same paragraph, he thoroughly discussed those records in the immediately preceding paragraphs . . . .

Short of re-summarizing or adding an internal citation to those paragraphs, it is hard to imagine how the ALJ could have been clearer.") (cleaned up).

Mr. Williams also requests remand on the ground that the ALJ "fails to cite any examples that serve as proof of genuine inconsistency" between Nurse Sanford's opinion and the longitudinal medical evidence. (Doc. 8 at 11). But in the ALJ's supportability analysis, the ALJ explained that the "longitudinal treating medical records"—which the ALJ had just summarized—did not demonstrate that Mr. Williams "consistently complained of significant back pain" and therefore explicitly contradicted Mr. Williams's reported difficulty sitting, standing, and walking to Nurse Sanford. (*See* doc. 6-3 at 21; *compare id.*, *with id.* at 19–20 (discussing the longitudinal "treating medical records from Cahaba Medical Care Foundation, which have consistently indicated that [Mr. Williams] had 0/10 pain")); *see also* doc. 6-10 at 14, 19, 24, 30 (Mr. Williams "report[ed] . . . no back pain . . . .")). The ALJ did not err by failing to re-summarize or re-cite to the evidence he had discussed in the preceding paragraphs, *see Raper*, 89 F.4th at 1275, and substantial evidence supports the ALJ's supportability analysis, *see Henry*, 802 F.3d at 1267.

Mr. Williams also disagrees with the ALJ's finding that Nurse Sanford's opinion of the medical necessity of the back brace lacked evidence in Mr. Williams's treatment records because "the record documents that Mr. Williams was using the

back brace . . . as early as March 23, 2021." (Doc. 8 at 11). But the ALJ explained that he found persuasive another physician's opinion that Mr. Williams "did not require an assistive device to ambulate even minimally in a normal workday." (Doc. 6-3 at 21) (citing doc. 6-12 at 73). Accordingly, the ALJ's persuasiveness analysis as to Nurse Sanford's opinion that the back brace was medically necessary is supported by substantial evidence. *See Henry*, 802 F.3d at 1267.

Finally, Mr. Williams disputes the ALJ's description of Nurse Sanford's opinion as vague and lacking in detail. (Doc. 8 at 10). He argues that if the ALJ thought Nurse Sanford's opinion was unclear, then the ALJ "was under obligation to contact her for clarification" as required by 20 C.F.R. §§ 404.1519p(b) and 416.919p(b).[2] (*Id.*). Those regulations provide that when a consultative examiner's "report is inadequate or incomplete, [the Social Security Administration] will contact the medical source who performed the consultative examination." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). The court is not persuaded that the ALJ's failure to contact Nurse Sanford is reversible error because the ALJ identified several additional reasons for why he did not find Nurse Sanford's opinion persuasive. (Doc. 6-3 at 21). And those additional reasons are supported by substantial evidence in the

---

[2] It appears that Mr. Williams cited outdated regulations in support of his argument. (*See* doc. 8 at 11) (citing 20 C.F.R. § 404.1512(e)). Section 404.1512 does not contain a subpart (e). 20 C.F.R. § 404.1512. The court assumes that Mr. Williams intended to cite the updated regulations that obligate an ALJ to contact a medical source who furnished an "inadequate or incomplete" report. *Id.* §§ 404.1519p(b), 416.919p(b).

record, as the court finds above. Therefore, if the ALJ erred by failing to contact Nurse Sanford, such error is harmless. *See Raper*, 89 F.4th 1261, 1274 n.11 ("Remand is unwarranted unless an error creates fundamental unfairness or prejudice[,] . . . [and] the burden of showing that an error is harmful normally falls upon [the claimant]."); *see also* doc. 8 at 12–13 (not arguing that the ALJ's failure to contact Nurse Sanford would have changed the outcome of the ALJ's persuasiveness analysis)).

## V.    CONCLUSION

Because substantial evidence supports the Commissioner's final decision, the court **WILL AFFIRM** it. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 31, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE